# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| MANUEL J. CASARES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 13-1633 (ABJ) |
| WELLS FARGO BANK, N.A., *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Manuel J. Casares has filed a complaint against defendants Wells Fargo Advisors, LLC ("WFA"), Wells Fargo Bank, N.A., and Robin Cobas, an employee of Wells Fargo Advisors. Plaintiff, who formerly worked as a financial advisor for Wells Fargo Advisors, alleges that he lost his home as a result of a mortgage fraud scheme, and that after he published a website critical of Wells Fargo's handling of the mortgage situation, he also lost his job. He filed this lawsuit alleging that Wells Fargo Bank, Wells Fargo Advisors, and Cobas engaged in wrongdoing, including treason, conspiracy, obstruction of justice, discrimination, and retaliation. *See* Am. Compl. [Dkt. # 5]. Defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that the claims arising out of the foreclosure are barred by the doctrine of res judicata, and that plaintiff's employment claims are subject to dismissal under the arbitration clause in plaintiff's employment agreement. *See* Defs.' Mot. to Dismiss [Dkt. # 74] ("Defs.' Mot.") at 1.

While the Court can certainly understand Mr. Casares's frustration under the circumstances, he has already had a full opportunity to litigate the foreclosure in the state courts of Florida, and he exercised his right to appeal those matters all the way to the Florida Supreme

Court.  Unfortunately for him, the law does not give civil litigants a second bite at the apple.  Because he has already litigated to judgment complaints related to his foreclosure, those allegations cannot be litigated again.  And due to the binding arbitration clause in plaintiff's employment contract with defendant Wells Fargo Advisors, he cannot bring his employment discrimination claims in federal court either.  The complaint will therefore be dismissed.[1]

## BACKGROUND

Plaintiff filed this lawsuit on October 23, 2013, Compl. [Dkt. # 1], and he filed an amended complaint as of right on December 2, 2013.  Am. Compl.  The amended complaint alleges the following facts, which the Court must accept as true for the purpose of resolving the pending motion to dismiss.  The Court also takes judicial notice of the filings in the Nineteenth Judicial Circuit Court in Indian River County, Florida, where plaintiff and defendants engaged in litigation surrounding the bank's efforts to foreclose on plaintiff's home.  *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (Mikva, C.J., dissenting) (observing that courts may take judicial notice "of facts on the public record" in resolving a motion to dismiss).

The complaint states that plaintiff began working as a financial advisor with Wells Fargo Advisors in its Prudential Securities office in May 2000 in Vero Beach, Florida.  Am. Compl. ¶ 23.  After Wachovia bought Prudential in 2004, it offered plaintiff an "employment benefit" of a mortgage "at a preferential rate of interest."  *Id.* ¶¶ 28–29.  Plaintiff then purchased a house in Vero Beach for $470,000, and Wachovia issued him a 30-year Fannie Mae mortgage of $355,000 at a 5.25% interest rate.  *Id.* ¶ 30.

---

[1]  Because the Court will dismiss the complaint on other grounds, it need not reach the question of whether Rule 8(a) would provide an alternative basis for dismissal.  *See* Defs.' Mot. at 1.  The Court notes, however, that the forty-eight page amended complaint, supplemented by an additional sixty-two pages of exhibits, can hardly be described as a "short and plain statement" of a claim entitling plaintiff to relief.  Fed. R. Civ. P. 8(a).

When plaintiff purchased the house, he told the underwriters "that he had no interest in [the] property if an honest professional appraisal failed to meet Fannie Mae requirements/standards." Am. Compl. ¶ 31. But, according to plaintiff, Wachovia had an "unwritten policy with [an] appraiser to produce an appraisal reflecting the amount which they provided to [the] appraiser." *Id.*

Plaintiff alleges that the broker failed to disclose "hidden but known defects" including damage caused by flooding and hurricanes, as well as mold. Am. Compl. ¶ 32. The complaint states that plaintiff became disabled due to the mold infestation, and he then sued Wachovia in the Circuit Court of the Nineteenth Judicial Circuit in Indian River County, Florida for nondisclosure and personal injury. *Id.* Plaintiff alleges that his Florida lawsuit "has been plagued by numerous [illegal] acts" by Wells Fargo, Wachovia, and by numerous attorneys and judges. *Id.*

The complaint states that as plaintiff's "disability worsened," a Vice President at Wells Fargo discriminated against him by, among other things, calling him a "whack job." Am. Compl. ¶ 34. Plaintiff confronted another manager about that incident, but the incident was "brushed . . . aside." *Id.*

In January 2011, plaintiff became aware of the "appraisal fraud / mortgage fraud" that was allegedly perpetrated by Wells Fargo Bank, and he reported the alleged fraud to Wells Fargo Home Mortgage. Am. Compl. ¶ 35. An employee of Wells Fargo Home Mortgage allegedly told plaintiff that Wells Fargo "could not do a thing as long as [p]laintiff continued making mortgage payments." *Id.* So plaintiff stopped making payments and defaulted on the loan. *Id.*

Wells Fargo Home Mortgage then offered to forbear on the impending foreclosure if plaintiff paid Wells Fargo $700 through Western Union. Am. Compl. ¶ 38. Plaintiff sent the money, but, according to the complaint, Wells Fargo initiated foreclosure proceedings anyway.

*Id.* Records from the Circuit Court for Indian River County, Florida reveal that Wells Fargo filed a complaint for foreclosure on December 20, 2011. *See* Ex. B. to Mot. for Remand & Attys' Fees & Costs [Dkt. # 2-2] ("Foreclosure Complaint").

Also in early 2011, plaintiff created a website "in the manner of an Ecuadorian 'denuncia'" on which he criticized various Wells Fargo employees. Am. Compl. ¶ 40. After Wells Fargo personnel became aware of the statements on plaintiff's website, a Wells Fargo Advisors compliance officer requested that plaintiff make certain changes to comply with corporate policy. *Id.* ¶ 41. Plaintiff alleges that despite complying with the repeated demands to make edits to his website, he was nevertheless terminated in retaliation for the statements on the website, and because of his national origin and disability. *See id.* ¶¶ 45, 47, 48.[2]

As plaintiff puts it, he filed this lawsuit to "seek[] monetary damages and injunctive relief from the Defendants for the blatant and egregious disabled adult, religious, racial and Ecuadorian culture discrimination he was subjected to during employment as a financial advisor at Defendant WFA's Vero Beach, Florida office." Am. Compl. ¶ 17. He also alleges that defendants retaliated against him by conspiring with an "organized criminal enterprise" in Indian River County, Florida, including judges and court staff, which subjected plaintiff to an "illegal foreclosure action" in a "Star Chamber Court." *Id.* ¶¶ 17–20.[3]

The amended complaint contains ten counts. The first six counts arise out of the foreclosure action: In Count I, plaintiff alleges that Wells Fargo Bank and others committed

---

2   Under the heading "Obstruction and Treason Allegations," plaintiff alleges that he filed a motion for injunctive relief in Florida in an effort to avoid his "improper firing," but that the ensuing court proceeding was tainted by the use of "mob hit squads" and "computer hacking." Am. Compl. ¶¶ 62–79.

3   Plaintiff alleges that the "'Star Chamber Court' operates to aid and comfort a subversive anti-American (enemy)," among others. Am. Compl. ¶ 20.

"treason and conspiracy" in handling the mortgage and foreclosure. Am. Compl. ¶¶ 84–89. Count II alleges that Wells Fargo Bank and others conspired to deprive plaintiff of his civil rights when they foreclosed on his property despite "knowledge of mortgage fraud / appraisal fraud." *Id.* ¶¶ 90–97. In Counts III and IV, plaintiff alleges that Wells Fargo and others conspired to obstruct justice during the foreclosure action. *Id.* ¶¶ 98–106. In Count V, he claims that Wells Fargo committed mail and wire fraud in the handling of the foreclosure. *Id.* ¶¶ 107–11. In Count VI, he alleges that judges in Indian River County obstructed justice in the foreclosure action. *Id.* ¶¶ 112–14.[4]

The remaining counts relate to plaintiff's tenure with Wells Fargo Advisors. Count VII alleges that WFA engaged in national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Count IX alleges retaliation in violation of Title VII. Am. Compl. ¶¶ 115–18, 124–28. In Count VIII, plaintiff alleges that WFA and Wells Fargo engaged in disability discrimination in violation of the Americans with Disabilities Act ("ADA"), and in Count X he alleges that they engaged in unlawful retaliation in violation of the ADA. *Id.* ¶¶ 119–123, 129–33.

On December 18, 2013, defendants filed a motion to stay and compel arbitration on the grounds that plaintiff's employment claims in Counts VII through X were subject to an arbitration clause contained in plaintiff's employment contract with Wells Fargo Advisors. Mem. in Supp. of Mot. to Stay & Compel Arb. [Dkt. # 7]. After plaintiff conceded that Counts VII through X were subject to arbitration, the Court granted the motion and stayed the remainder of the action. Order (Jan. 23, 2014) [Dkt. # 13]. The parties then engaged in a lengthy arbitration before the

---

4   Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), plaintiff voluntarily dismissed count VI on March 28, 2014. Notice of Rule 41 Voluntary Dismissal [Dkt. # 18].

5

Financial Industry Regulatory Authority, commonly referred to as "FINRA."  Defs.' Status Report on Termination of Arb. Proceedings [Dkt. # 68] ("Arb. Status Report").

On April 5, 2017, FINRA terminated the arbitration.  Ex. A to Arb. Status Report [Dkt. # 68-1] at 1.  On May 18, 2017, defendants filed their motion to dismiss.  Defs.' Mot.  Plaintiff opposed the motion on June 23, 2017, Pl.'s Resp. to Defs.' Mot. [Dkt. # 76] ("Pl.'s Opp."), and defendants waived their right to file a reply.  Defs.' Notice of Waiver of Right to File Reply [Dkt. # 79].

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.  Counts I through V are barred by the doctrine of res judicata.**

Defendants have moved to dismiss the first five counts in the amended complaint under the doctrine of res judicata. "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Under this doctrine, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in that [prior] action." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also I.A.M. Nat'l Pension Fund*, 723 F.2d at 949 (noting that res judicata "forecloses all that which might have been litigated previously"), citing *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

When applying res judicata principles, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813–14 (D.C. Cir. 2010), quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). If those factors have been satisfied, a court may dismiss claims precluded by res judicata under Rule 12(b)(6). *See, e.g.*, *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 169 (D.D.C. 2008), citing *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76–77 (D.C. Cir. 1997).

A party cannot escape application of the doctrine by raising a different legal theory or seeking a different remedy in the new action that was available to him in the prior action. *See Apotex, Inc. v. FDA*, 393 F.3d 210, 218 (D.C. Cir. 2004) (observing that "simply raising a new legal theory . . . is precisely what is barred by res judicata"). For that reason, for res judicata purposes, a "cause of action is determined by the factual nucleus, not the theory on which a plaintiff relies." *Sheptock v. Fenty*, 707 F.3d 326, 330 (D.C. Cir. 2013), quoting *Faulkner v. GEICO*, 618 A.2d 181, 183 (D.C. 1992).

To determine whether claims derive from the same nucleus of facts, this Circuit has adopted a transactional, pragmatic approach. *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006), citing *Stanton*, 127 F.3d at 78. A court looks at "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment

8

as a unit conforms to the parties' expectations." *Stanton*, 127 F.3d at 78, quoting Restatement (Second) of Judgments § 24(2) (1982).

Here, the Court finds that Counts I through V of the amended complaint share the same factual nucleus as the allegations that were litigated in plaintiff's counterclaim in the Florida foreclosure action. In the amended complaint, plaintiff states that he is challenging the alleged "illegal foreclosure action . . . in Indian River County." Am. Compl. ¶ 17. But plaintiff has already had the opportunity to litigate any defenses to that action. In his counterclaim in the foreclosure action, Casares brought many of the same claims that he brings here; treason and conspiracy, conspiracy to deprive him of his rights, and obstruction of justice all appear in both the amended complaint and the state court counterclaim. *See* Am. Compl. ¶¶ 84–106 (Counts I through IV); Ex. B to Defs.' Opp. to Pl.'s Mot. for Leave to Am. [Dkt. 37-1] ("Foreclosure Countercl.") ¶¶ 32–41, 48 (Counts I, II, and V). And while plaintiff did not previously raise the mail and wire fraud allegations set forth in Count V of the amended complaint, the state court counterclaim arose out of the same nucleus of facts – the alleged irregularities and wrongdoing in connection with plaintiff's mortgage and foreclosure. *See* Foreclosure Countercl. Therefore, because the claims in Counts I–V relate to the same factual allegations that were or could have been aired in the prior case, the claims are sufficiently similar to satisfy the first element of res judicata.

The second element, that both cases involve the same parties, has also been met because plaintiff has sued the same defendants as in the foreclosure action.

The third and fourth elements – whether a judgment on the merits has been entered by a court of competent jurisdiction – have also been satisfied. "A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from

matters of practice, procedure, jurisdiction[,] or form.'" *Sheppard*, 791 F. Supp. 2d at 7, quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968). Here, the state court in Florida conducted a two-day bench trial and found for Wells Fargo on its complaint for foreclosure, and against plaintiff on his counterclaims, citing "the testimony and evidence presented at trial and the record in this case," and it noted that it would "enter a Final Judgment." Order Entered Upon Non-Jury Bench Trial, Ex. A to Defs.' Opp. to Pl.'s Mot. for Leave to Amend [Dkt. # 37-1] ("Foreclosure Order") at 1.[5] So the Court finds that a judgment on the merits was entered. And since Florida law grants jurisdiction to the circuit courts to "rescind, vacate, and set aside a decree of foreclosure of a mortgage of property," Fla. Stat. § 702.07, the circuit court in Indian River County was a court of competent jurisdiction to resolve plaintiff's counterclaim.

For all of these reasons, the claims in Counts I through V of plaintiff's amended complaint are precluded, and the Court will grant defendants' motion to dismiss.

## II. Plaintiff's employment claims are foreclosed by the binding arbitration clause in his employment agreement.

Defendants move to dismiss the remaining counts, arguing that they are barred by the arbitration clause in plaintiff's employment agreement with Wells Fargo Advisors. This motion will also be granted.

By enacting the Federal Arbitration Act ("FAA"), Congress adopted "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The

---

5   The circuit court's judgment was affirmed on appeal in a per curiam order, *Casares v. Wells Fargo Bank, N.A.*, 193 So. 3d 897 (Fla. Dist. Ct. App. 2016), and the Florida Supreme Court dismissed the petition for discretionary review for lack of jurisdiction. *Casares v. Wells Fargo Bank, N.A.*, No. SC16-1503, 2016 WL 4415365 (Fla. Aug. 19, 2016); *see Jackson v. State*, 926 So. 2d 1262, 1264 (Fla. 2006) (holding that the Supreme Court of Florida "lacks jurisdiction over unelaborated per curiam decisions in the context of discretionary review jurisdiction").

10

FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Upon determining the existence of a valid arbitration contract, courts in this district have consistently dismissed cases when all of the plaintiff's claims are subject to arbitration. *See, e.g., Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 158 (D.D.C. 2002) (noting that "dismissal is . . . in accordance with what other courts have done when all of the plaintiff's claims must be submitted to arbitration"); *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 134 (D.D.C. 2013) (compelling arbitration on all claims and dismissing the case).

The Court granted defendants' motion to compel arbitration in 2014 because plaintiff's employment claims were subject to arbitration pursuant to the parties' employment agreement, and that circumstance has not changed.[6] In his employment agreement, plaintiff agreed that "[a]ny claim or controversy arising out of . . . [plaintiff's] employment or termination of [plaintiff's] employment shall be settled by arbitration." Ex. A to Mem. in Supp. of Mot. to Stay & Compel Arb. [Dkt. # 7-1] ¶ 7. Plaintiff conceded in the past that his employment claims were subject to arbitration by not opposing the submission of Counts VII through X to an arbitration panel, *see* Pl.'s Mem. in Supp. of Answer to Mot. to Stay & Compel Arb. [Dkt. # 12] at 9; and in his opposition to the motion to dismiss, he does not appear to put forth any arguments related to the employment counts. *See generally* Pl.'s Opp.

Because only an arbitration panel can resolve plaintiff's employment discrimination claims, the Court will grant defendants' motion to dismiss Counts VII through X.

---

6     At the time, the Court only stayed the action and did not dismiss it entirely, but that was because the complaint also included numerous counts that were not subject to arbitration. *See* Order (Jan. 23, 2014). Now, no other claims remain.

11

## CONCLUSION

Because Counts I through V are subject to dismissal on res judicata grounds, and because Counts VII through X can only be resolved through arbitration, the Court will grant defendants' motion to dismiss.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: August 7, 2017